UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DANA DUDLEY,
        Petitioner,

     V.                                         14-cv-12100-RGS

KELLY RYAN,
        Respondent.

REPORT AND RECOMMENDATION ON PETITION UNDER 28 U.S.C. § 2254
FOR A WRIT OF HABEAS CORPUS (#1)

KELLEY, U.S.M.J.

## I. INTRODUCTION

Dana Dudley petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Dudley was charged with armed robbery in violation of M.G.L. c. 265, §15A (b). On September 23, 2011, a jury convicted Dudley of the lesser offense of unarmed robbery (M.G.L. c. 265, § 19(b)) and assault and battery. The petitioner was sentenced to a term of ten to twelve years, to be followed by three years of probation.

After his conviction, the petitioner appealed to the Massachusetts Court of Appeals. The Court of Appeals affirmed the petitioner's conviction. *Commonwealth v. Dudley*, 83 Mass. App. Ct. 1125, 985 N.E.2d 874 (Mass. App. Ct. 2013). The petitioner's application for further appellate review to the Massachusetts Supreme Judicial Court was denied on June 6, 2013. *Commonwealth v. Dudley*, 465 Mass. 1106, 989 N.E.2d 899 (Mass. 2013). On May 12, 2014, the petitioner filed this motion under 28 U.S.C. § 2254.

## II. BACKGROUND

### A. *Factual Background*

The petitioner's trial was scheduled to commence on September 20, 2011. On that date, the petitioner attempted to enter a guilty plea to the charge of armed robbery and assault and battery with a dangerous weapon. Dckt. #13-2, Ex. 1, p. 8. Judge Cornelius Moriarty rejected the petitioner's plea, stating that the recommended sentence of three years with four years of probation to follow was too lenient based on the petitioner's extensive criminal history. *Id.* at 28.

The following facts are taken from the transcript of the petitioner's trial, which started on September 22, 2011 before Judge Moriarty in the Hampden Superior Court. On the evening of November 20, 2010, a group of people, including the victim, Anthony Copeland, gathered at 30 Burton Street in Springfield, Massachusetts. Dckt. #13-2, Ex. 4, 1-54. At some point in the evening, the victim, standing in the kitchen, removed money from his pocket and began to count it. *Id.* He had just gotten the money, about five or six hundred dollars, from the bank, and had hundred dollar bills and twenties. *Id.* While counting his money, the victim felt something hit him in his neck. *Id.* at 1-56. He looked up, saw the petitioner, fell limp, and witnessed the petitioner grab his money. *Id.* at 1-57. Just after the petitioner took his money, the victim saw that the petitioner had a pair of pruning shears in his hands. *Id.* at 1-58.

Lisa Jones, who was standing in the kitchen at the time of the incident talking to the victim, also saw the petitioner lunge at the victim while the victim was counting his money. Dckt. #13-2, Ex. 5, p. 14. Jones stated that at first the victim thought the petitioner was joking because since everyone in the house was friends or family, no one expected a crime to occur. *Id.*

at 14. Jones saw the petitioner lunge at the victim, saw a flash of metal, and saw the victim grab his neck. *Id.* Shamont Weaver also observed the petitioner approach the victim and grab his money away from him. *Id.* at 35-36. Like Jones, Weaver noted that at first the victim thought the petitioner was "playing" when he tried to grab the money. *Id.* at 35. Weaver stated that when the victim tried to grab the money back, the petitioner stabbed in him the neck with a pair of rosebush cutters. *Id.* at 35-36. After the petitioner struck the victim in the neck, Weaver called 911. *Id.* at 36.

When Springfield police officers arrived, they observed the victim lying on the couch. Dckt. # 13-2. Ex. 4, p. 1-5. The house was in general disarray, with beer bottles on tables, *id.* at 1-40, and there were approximately fifteen people present. *Id.* at 1-5. The victim had a towel pressed against a puncture wound on his neck, which was bleeding. *Id.* at 1-6, 7. Officers at the scene learned from witnesses that the petitioner stabbed the victim, and left the house with a man later identified as Derek Besaw. *Id.* at 1-21, 1-31, 1-38, 1-49, 1-45. After getting a description of the petitioner and Besaw from the witnesses at the scene, officers in the area saw two men who matched the descriptions. Weaver identified the petitioner, and subsequently the petitioner was transported to the hospital where the victim also identified the petitioner as being the person who caused his injuries. *Id.* at 1-35. Officers recovered $635 from the pockets of the petitioner, including five one-hundred dollar bills, with the remaining money in five, ten and twenty-dollar denominations. Dckt. # 13-2, Ex. 5, p. 5. A screwdriver and a wrench were recovered from Besaw. *Id.* at 1-43. Officers failed to recover any cutting instruments from the petitioner, from the common areas of the house, or the area where the petitioner was stopped. *Id.* at 1-43. At trial the petitioner did not put on any witnesses. *Id*. at 69.

## B. *State Procedural Background*

On appeal to the Massachusetts Appeals Court, the petitioner argued that he was prejudiced by the trial judge's failure to give an instruction on the lesser included offense of larceny from a person. *Dudley,* 83 Mass. App. Ct. at 1125. In a summary disposition pursuant to Rule 1:28, the Court of Appeals found that "no view of the evidence" supported the petitioner's contention that the judge should have instructed the jury on the lesser offense of larceny. *Id.* The Supreme Judicial Court likewise issued a summary dismissal of the petitioner's appeal. *Dudley*, 465 Mass. at 1106.

## III. ANALYSIS

### A. *Overview of the claim*.

The petitioner, who is proceeding pro se, argues that he is entitled to habeas relief because the state court refused to instruct the jury on the lesser included offense of larceny from the person, despite the fact that petitioner requested the instruction, and the evidence at trial provided a rational basis for acquitting the petitioner of robbery.

### B. *Standard of Review*

"[A] federal court may not issue a habeas petition 'with respect to any claim that was adjudicated on the merits in State court proceedings' unless the state court decision: 1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *McCambridge v. Hall,* 303 F.3d 24, 34 (1st Cir. 2002) (quoting 28 U.S.C. § 2254(d) (Supp. II 1996)). A decision is "contrary to" clearly established federal law "if the state court arrives at a

conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413, 120 S.Ct. 1495, 1523 (2000). Under subsection (d)(2), state court factual findings are "entitled to a presumption of correctness." *Yeboah-Sefah v. Ficco*, 556 F.3d 53, 81 (1st Cir. 2009) (citing *Demosthenes v. Baal,* 495 U.S. 731, 735, 110 S.Ct. 2223, 2225 (1990)). A petitioner must rebut the state court factual findings by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Companonio v. O'Brien,* 672 F.3d 101, 109 (1st Cir. 2012), cert. denied, *Companonio v. O'Brien*, 133 S. Ct. 197 (2012); *Yeboah-Sefah,* 556 F.3d at 81. While the relationship between the standards enunciated in § 2254(d)(2) and § 2254(e)(1) is somewhat unclear,[1] *Companonio,* 672 F.3d at n. 6, both standards "'express the same fundamental principle of deference to state court findings.'" *John v. Russo*, 561 F. 3d 88, 92 (1st Cir. 2009) (quoting *Teti,* 507 F.3d at 58).

### C. *Analysis of the Claim*

The standard for federal habeas relief for a claim that a trial judge failed to give a requested instruction is generally difficult to meet because "'[i]nstructions in a state trial are a matter of state law to which substantial deference is owed . . .'" *Bly v. St. Amand,* __ F.Supp. 2d __, 2014 WL 1285684, *16 (D. Mass. 2014) (quoting *Niziolek v. Ashe*, 694 F.2d 282, 290 (1st Cir.1982)). The general rule is that "improper jury instructions will not form the basis for federal habeas corpus relief." *Id.* Habeas relief may be granted only when the jury instructions were so

---

[1] "The Supreme Court has suggested that § 2254(e)(1) applies to 'determinations of factual issues, rather than decisions," while § 2254(d)(2) 'applies to the granting habeas relief' itself." *Teti v. Bender*, 507 F.3d 50, 57-58 (1st Cir. 2007) (cert. denied, *Teti v. Clark*, 552 U.S. 1287, 128 S.Ct. 1719 (2008)) (quoting *Miller-El v. Cockrell,* 537 U.S. 322, 341-42, 123 S. Ct.

bad as to violate due process. "'[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.'" *Gaines v. Matesanz,* 272 F. Supp. 2d 121, 131 (D.Mass. 2003) (quoting *Niziolek*, 694 F.2d at 290) (further citations omitted) (alterations original).

In a case such as this, where the petitioner's claim is based on the failure to give a jury instruction, meeting the habeas standard is even more difficult. "When the challenge to jury instructions is not that they are erroneous, but rather that they are incomplete, it is even harder to prevail on a due process claim." *Wright v. Marshall,* 2009 WL 3764024, *11 (D. Mass. November 9, 2009) (cert. denied, *Wright v. Marshall*, 132 S.Ct. 1565 (2012)) (citing *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S. Ct. 1730 (1977)). However, habeas relief is appropriate where "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)); *Rosado v. Allen*, 482 F.Supp.2d 94, 114 (D.Mass. 2007).

There was no error here in the trial court's refusal to provide an instruction on the lesser included offense of larceny from a person. In Massachusetts, a "judge must instruct on a lesser included offense if the evidence at trial provides 'a rational basis for acquitting the defendant of the crime charged and convicting him of the lesser included offense.'" *Commonwealth v. Staines*, 441 Mass. 521, 538, 806 N.E. 2d 910, 923 (Mass. 2004) (quoting *Commonwealth v. Souza*, 428 Mass. 478, 493-494 (Mass. 1998)) (further citations omitted). Here, all of the testimony at trial

---

1029 ( 2003)).

indicated that the petitioner injured the victim either before or immediately after he stole his money. While the testimony varied slightly, there was no rational basis by which the petitioner could have been convicted of the lesser included offense of larceny from the person. In Massachusetts, the unarmed robbery statue draws substantially from the common law of robbery and requires a showing of larceny from a person by force and violence or by assault and putting in fear. *See, Commonwealth v. Jones*, 362 Mass. 83, 86, 283 N.E.2d 840, 842-43 (1972); M.G.L. c. 265, § 19(b). "Robbery is distinguished from larceny by its requirement of actual or constructive force." *Commonwealth v. Cruzado,* 73 Mass. App. Ct. 803,805, 901 N.E. 2d 1245, 1247 (Mass. App. Ct. 2009). As noted by the Appellate Court in its decision, in Massachusetts, "[a] larceny may be converted into a robbery if . . . an assault is committed on a person who, having some protective concern for the goods taken, . . . interferes with the completion of the theft." *Dudley*, 83 Mass. App. Ct. at 1125 (citing *Commonwealth v. Rejotte*, 23 Mass. App. Ct. 93, 94 (1986)).

The victim, Jones, and Weaver all testified that the petitioner attacked the victim with some sort of pruning shear while he took the victim's money. Not only did the police find the victim with injuries consistent with that testimony, but they also found the petitioner in possession of the same amount of money as was taken from the victim. Despite the petitioner's contention, there was no violation of the petitioner's Fourteenth Amendment Due Process rights when the judge refused to instruct on the lesser included offense of larceny from the person.

## IV. CONCLUSION

For all the above reasons, I RECOMMEND that (1) the petitioner's motion under 28 U.S.C. §2254 to Vacate, Set Aside, or Correct Sentence by a Person in State Custody (#1) be DENIED, and (2) Final Judgment enter DISMISSING the action.

## V. REVIEW BY THE DISTRICT JUDGE

The parties are hereby advised that any party who objects to this recommendation must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603(1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ M.Page Kelley
M. Page Kelley
United States Magistrate Judge

October 28, 2014.